UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Clayton Baasi,

                    Plaintiff,

    vs.

Joan Fabian, David Crist,
Sheryl Vesner,[1] David Reishus,
Michelle Smith, John King,
John Doe, and Jane Doe,

                    Defendants.          Civ. No. 09-781 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge
pursuant to a general assignment, made in accordance with the provisions of Title 28
U.S.C. §636(b)(1)(B), upon the Motion of the Defendants to Dismiss or, alternatively,
for Summary Judgment. For these purposes, the Plaintiff appears pro se, and the

---

[1]As a matter of convenience, we correct the spelling of the Defendant Sheryl
Vezner ("Vezner") throughout the text of this Report.

Defendants appear by Margaret E. Jacot, Assistant Minnesota Attorney General. For reasons which follow, we recommend that the Defendants' Motion be granted.

## II.  Factual and Procedural Background

The Plaintiff is a Minnesota State prisoner, who is currently serving a sentence at the Minnesota Correctional Facility, in Stillwater, Minnesota ("MCF-Stillwater"), for First Degree Murder in the Commission of a Burglary.  See, Status History Report, Affidavit of John Hillyard ("Hillyard Aff."), Exhibit B, Docket No. 19-1.  On or about August 26, 2008, the Plaintiff submitted an Offender Voucher/Special Order Form, in order to request permission to order a book, that was entitled The Naked Woman: A Study of the Female Body, which he had discovered listed in the Anthropology section of a bookseller catalog.  Id. at ¶¶11-12; Hillyard Aff., Exhibit C.  Corrections Sergeant John Hillyard ("Hillyard"), who is employed in the Property Department at MCF-Stillwater, denied that request.  See, Hillyard Aff., at ¶4, and Exhibit C.  The Plaintiff grieved that denial to Hillyard's supervisor, the Defendant Sheryl Vezner ("Vezner"), who informed the Plaintiff that she had examined the advertising material for the book, that it was likely that the book would be confiscated upon receipt, that it had previously been denied to another inmate, but that the Plaintiff could order the book at his own risk.  Hillyard Aff., at ¶4, and Exhibit D.

The Plaintiff purchased the book, and it was shipped on or about October 6, 2008. See, Complaint, at ¶14. Upon delivery, Hillyard inspected the book, concluded that it violated the Minnesota Department of Corrections ("DOC") Directive 301.030, which governs prison contraband, and he refused delivery of the book to the Plaintiff. See, Hillyard Affidavit, at ¶5. Since the Plaintiff had ordered other books as well, Hillyard gave him a copy of the invoice, with the confiscated book circled, and noted: "U.A. sexual content" on the invoice. Id., Exhibit G; Exhibits to Affidavit of Clayton Baasi ("Baasi Aff."), Docket No. 24-1, Exhibit 5. The Plaintiff alleges that, on or about October 31, 2008, he was informed that the book contained "nudity," in violation of Directive 301.030.

The Plaintiff filed an informal grievance with Hillyard, on October 30, 2008, in which he asserted that the book is a volume of Anthropology, and he requested the specific policy under which the book was denied to him. See, Hillyard Aff. Exhibit H. Hillyard responded on October 31, 2008, and stated that access to the book was denied, pursuant to Directive 301.030, and, because the Plaintiff was not enrolled in a prison course, or a correspondence course, he would be able to obtain the book if he explained why he needed the book for educational, or anthropological purposes. Id. On November 3, 2008, the Plaintiff grieved Hillyard's response to Vezner, and asked

for a citation to the Policy, which stated that he was required to be in art, or education, in order to receive the book, and he again asserted that he had requested the book "for educational reasons, to improve [his] knowledge." <u>Hillyard Aff., Exhibit I</u>, at p. 2 of 5. Vezner replied on November 18, 2008, and stated that the practice of the prison was to require enrollment in art or education, in order "to prove [the book is] for educational needs." <u>Id</u>.

On November 20, 2008, the Plaintiff grieved Vezner's response to Defendant David Reishus ("Reishus"), who is a Program Director at MCF-Stillwater, as he urged that the book did not violate the Directive. <u>Id., Exhibit I</u>, at p. 3 of 5. Reishus denied the grievance, and stated that the book contained "nudity per the contraband policy." <u>Id.</u> The Plaintiff grieved Reishus' response to Defendant Michelle Smith ("Smith"), who is an Associate Warden at MCF-Stillwater, and contended that the Anthropology work did not violate the Policy, and that he had ordered the book for educational purposes. <u>Id., Exhibit I</u>, at p. 4 of 5. Smith responded on December 1, 2008, and noted that the book contained nudity under the Policy, and that she was not aware of the Plaintiff's "enrollment in any educational classes needing this book for study." <u>Id.</u> The Plaintiff grieved Smith's response to Defendant John King ("King"), who is the Warden of MCF-Stillwater, and he again asserted that the Anthropology text

conformed to the Directive, since he had purchased the book for his own education, and he requested a citation to the specific policy which applied, if not Directive 301.030.  Id., Exhibit I, at p. 5 of 5.  King responded on December 4, 2008, and advised that he supported Smith's response, and that he did not "buy [the Plaintiff's] anthropological argument for 1 minute."  Id.

Subsequently, the Plaintiff filed a formal grievance on December 15, 2008, asserting that the book was authorized by the Directive.  Id., Exhibit I, at p. 1 of 5. King denied the formal grievance because, he asserted, the book contained nudity, and the Directive allowed latitude for health or educational reasons, but that the Plaintiff was not enrolled in any courses which required the book, nor had he demonstrated a medical need.  Id.  The Plaintiff appealed King's decision, and argued that the book was clearly an Anthropology text, which he was allowed to order, and that the MCF-Stillwater staff made "imaginary additions to the Policy" in order to deny him access to the book.  Id.  The Defendant David Crist ("Crist"), who is the Assistant Commissioner of the DOC, upheld that denial on January 16, 2009.  Id.

On April 7, 2009, the Plaintiff commenced this action under Title 42 U.S.C. §1983, alleging that the confiscation of the book violated his constitutional right to free speech, property, and due process, under the First, Fourth, and Fourteenth

Amendments. See, Complaint, Docket No. 1. The Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Id. The Defendants filed an Answer, in which they asked that the Complaint be dismissed for lack of subject matter jurisdiction, for a failure to state a claim upon which relief can be granted, and on the basis of qualified immunity. See, Docket No. 12.

## III. Discussion

A. Standard of Review. A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived. See, Moubry v. Independent School District No. 696, 951 F. Supp. 867, 882 (D. Minn. 1996), citing Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court sua sponte."). "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments." Moubry v. Independent School Dist. No. 696, supra at 883, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." <u>Carlson Holdings, Inc. v. NAFCO Ins. Co.</u>, 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing <u>Titus v. Sullivan</u>, supra at 593; <u>Osborn v. United States</u>, supra at 729 n. 6. Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." <u>Id.</u> at 1073.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are intended to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." <u>Id.</u> When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,'" "[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" <u>Zunamon v. Brown</u>, 418

F.2d 883, 886 (8th Cir. 1969), quoting <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936).

When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint, and "construe those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004). All reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party. See, <u>Maki v. Allete, Inc.</u>, supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[2] <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998); see also, <u>Maki v.</u>

---

[2]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007)(the standard in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> Here, we apply the Supreme Court's "accepted pleading standard."

Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); see also, Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

In addition, Rule 12(c), Federal Rules of Civil Procedure, allows parties to move for a Judgment on the Pleadings, "[a]fter the pleadings are closed, but within such time as not to delay the trial." The standard upon which Rule 12(c) Motions are decided is akin to that of a Motion to Dismiss under Rule 12(b)(6), Federal Rules of

Civil Procedure.  See, <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990) ("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."), citing <u>St. Paul Ramsey County Med. Ctr. v. Pennington County</u>, 857 F.2d 1185, 1187 (8th Cir. 1988); see also, <u>Flora v. Firepond, Inc.</u>, 260 F. Supp. 2d 780, 784 (D. Minn. 2003), aff'd, 383 F.3d 745 (8th Cir. 2004).  As a result, a "[j]udgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 803 (8th Cir. 2004), citing <u>United States v. Any & All Radio Station Transmission Equip.</u>, 207 F.3d 458, 462 (8th Cir. 2000).  A disputed fact is "material," if it must inevitably be resolved, and that resolution will determine the outcome of the case.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Jenkins v. Southern Farm Bureau Casualty</u>, 307 F.3d 741, 744 (8th Cir. 2002)("A fact is material if its determination in favor of the non-moving party could affect the result in the case."); <u>Herring v. Canada Life Assurance</u>, 207 F.3d 1026, 1028 (8th Cir. 2000).

When making such determinations, "[w]e accept as true, all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party."  <u>Syverson v. Firepond, Inc.</u>, 383 F.3d 745, 749 (8th Cir. 2004), quoting <u>United States v. Any & All Radio Station Transmission Equip.</u>, supra at 462.

However, we need not accept as true, wholly conclusory allegations, or unwarranted factual inferences. See, <u>Hanten v. School Dist. of Riverview Gardens</u>, 183 F.3d 799, 805 (8th Cir. 1999); <u>Springdale Educ. Ass'n v. Springdale School Dist.</u>, supra at 651. Moreover, in treating the factual allegations of a Complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." <u>Westcott v. City of Omaha</u>, supra at 1488, citing <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987).

With respect to the Motions for Summary Judgment, such a Motion is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a

disputed fact is "material" if it must inevitably be resolved, and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 248; <u>Planned Parenthood of Minnesota/ South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." <u>Rule 56(e), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir.

2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center, Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, supra at 323; see also, <u>Sallis v. Univ. of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995). "We consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions as fact." <u>Murphy v. Missouri Dep't of Corrections</u>, 372 F.3d 979, 982 (8th Cir. 2004), citing <u>Shaver v. Independent Stave Co.</u>, 350 F.3d 716, 723 (8th Cir. 2003) and <u>Rule 56(e), Federal Rules of Civil Procedure</u>.

  B. <u>Legal Analysis</u>. Since they involve somewhat differing analyses, we separately address the issues presented by Defendants' Motion, commencing with their Motion to Dismiss under the Eleventh Amendment.

1.   <u>Motion to Dismiss: Eleventh Amendment</u>.  The Defendants argue that, in their official capacities as State officers, they are immune from a suit for damages.

a.   <u>Standard of Review</u>.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  <u>United States Constitution, Amendment XI</u>.  For over a century, the Amendment has been understood to stand for the proposition that a non-consenting State is immune from Federal Court suits by its **own** citizens, as well as by citizens of another State.  See, <u>Kimel v. Florida Board of Regents</u>, 528 U.S. 62, 72 (2000); <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54 (1996); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15 (1890)(such suits were "not contemplated by the constitution when establishing the judicial power of the United States").

In effect, the Eleventh Amendment immunizes from suit a "state agency or official * * * if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'"  <u>Hadley v. North Arkansas Community Technical College</u>, 76 F.3d 1437,

1438 (8th Cir. 1996), quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123 n. 34 (1984); see also, Regents of the University of California v. Doe, 519 U.S. 425, 429 (1997); Edelman v. Jordan, 415 U.S. 651, 652-53 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds, Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 614-15 (2002).

Over the years, the Supreme Court has fashioned a patchwork of exceptions to the Eleventh Amendment's limitation on Federal Court jurisdiction, as that doctrine was initially expressed in Hans v. Louisiana, supra.  Under the doctrine of Ex parte Young, 209 U.S. 123 (1908), a Federal Court retains jurisdiction, notwithstanding the Eleventh Amendment, to direct State officials to conform their practices to the requirements of Federal law, even though such an injunction might have collateral effects upon a State Treasury.[3]  See, Edelman v. Jordan, supra at 667-68; Milliken v. Bradley, 433 U.S. 267, 289 (1977).  However, such an exercise of jurisdiction does not extend to the award of retroactive relief, which requires the payment of funds from

_____

[3]In Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 126 (1984), the Court held that pendent State law claims, for even prospective injunctive relief, were barred by the Eleventh Amendment and, to that extent, the doctrine in Ex parte Young was substantially narrowed.

the State Treasury. See, <u>Edelman v. Jordan</u>, supra at 667-68. Thus, the Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, as well as State Agencies, because such lawsuits are essentially "for the recovery of money from the state." <u>Ford Motor Co. v. Department of the Treasury</u>, supra 464; see also, <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989)("[N]either a State nor its officials acting in their official capacities are 'persons' under §1983" when sued for damages.).

In an action under Title 42 U.S.C. §1983, a public servant may be sued in an official, or in an individual capacity, or both. See, <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999). The Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action. See, <u>Hadley v. North Arkansas Community Technical College</u>, 76 F.3d 1437, 1438 (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997)(a State Agency or its officials may invoke Eleventh Amendment immunity, if the practical result of a suit would result in judgment against the State itself). Such immunity also extends to State officials, who are named as individual defendants acting in their official capacities. <u>Id.</u> When the action is against the office and not the person, there is no difference from a suit

against the State itself.  See, <u>Hafer v. Melo</u>, 502 U.S. 21, 25-26 (1991); <u>Will v. Michigan Department of State Police</u>, supra at 71.

> b.  <u>Legal Analysis</u>.  As noted, the Plaintiff has sued all of the Defendants in their individual and official capacities, for injunctive relief, and for damages, and he argues that the enactment of the Minnesota Tort Claims Act, Minnesota Statutes Section 3.736, constitutes a waiver of the Eleventh Amendment immunity.  We disagree.  The Minnesota Tort Claims Act does not serve as a "clear and unequivocal" waiver of Minnesota's immunity to suits that are brought in Federal Court, based upon Federal or constitutional law.  See, <u>Young v. Minnesota Dep't of Corrections</u>, 2006 WL 2670030 at *7 (D. Minn., September 18, 2006)("While Minnesota has waived its sovereign immunity to some extent in Minn. Stat. §3.736 [Minnesota Tort Claims Act], the language of subdivision 2 of that section does not clearly show that Minnesota intended to waive any claim of sovereign immunity in federal court."), quoting, <u>DeGidio v. Perpich</u>, 612 F.Supp. 1383, 1389 (D. Minn. 1985); see also, <u>Hoeffner v. University of Minnesota</u>, 948 F.Supp. 1380, 1391 (D. Minn. 1996)(finding Minnesota Tort Claims Act an ineffective waiver because, immunity waiver must specify the State's intention to subject itself to suit in the Federal Courts)[internal quotations omitted].

The Plaintiff has alleged no other basis for any purported waiver, by the State of Minnesota, of Eleventh Amendment immunity, and our independent review does not disclose any. Therefore, we recommend the dismissal of the official-capacity claims against the Defendants in which the Plaintiff seek damages.

      2.    <u>Motion to Dismiss: The Defendant Joan Fabian's ("Fabian's") Personal Involvement</u>.

Fabian argues that she is not subject to suit, under the circumstances presented here, because the Plaintiff has not alleged that she was personally involved in the alleged constitutional violations. We agree. In order to sustain a claim under Section 1983, a plaintiff must show that the named defendants were directly, and personally, involved in the illegal acts, or in the policy decision which created the unlawful context for those acts. See, e.g., <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001); <u>McNair v. Norris</u>, 210 F.3d 379 at *1 (8th Cir., 2000); <u>Martin v. Sergeant</u>, 780 F.2d 1334, 1337 (8th Cir. 1985). Accordingly, the doctrine of <u>respondeat</u> <u>superior</u> is not available to a Section 1983 plaintiff. See, e.g., <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691 (1978); <u>Lux by Lux v. Hansen</u>, 886 F.2d 1064, 1067 (8th Cir. 1989); <u>Rasmussen v. Larson</u>, 863 F.2d 603, 605 (8th Cir. 1988).

Moreover, a Warden's, or another official's, "'general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997), quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995); see also, Brisco-Wade v. Carnahan, 149 F. Supp.2d 891, 899 (E.D. Mo. 2001); Krein v. Norris, 2001 WL 33406651 at * 3 (E.D. Ark., May 19, 2000). Absent a showing of direct and personal involvement, the only other basis, upon which a plaintiff may state a claim against a defendant, is by demonstrating that the particular defendant failed to properly train, supervise, or control, the actions of a subordinate, who invaded the plaintiff's rights. See, City of Canton v. Harris, 489 U.S. 378, 388 (1989); Ruge v. City of Bellevue, 892 F.2d 738, 739-40 (8th Cir. 1989); Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989). Here, the Plaintiff has alleged no conduct, on the part of Fabian, which relates to his claims, and therefore, we recommend the dismissal of Fabian as a Defendant.

        3.      Motion for Summary Judgment: First Amendment Claim. The Defendants move for Summary Judgment on the Plaintiff's First Amendment claim, and argue that there are no genuine issues of material fact, and that, as a matter of law, the Plaintiff has not demonstrated a constitutional violation.

a.      <u>Standard of Review</u>.  It is settled law that prisoners do not automatically forfeit all of their constitutionally protected freedoms upon entering a correctional facility.   See, <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979); <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  At the same time, "'[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.'"  <u>Hamilton v. Schriro</u>, 74 F.3d 1545, 1550 (8th Cir. 1996), cert. denied, 519 U.S. 874 (1996), quoting <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125 (1977).  As a consequence, to the extent that prisoners have First Amendment rights, "they have only those rights that are consistent with prison discipline." <u>Ustrak v. Fairman</u>, 781 F.2d 573, 580 (7th Cir. 1986), cert. denied, 479 U.S. 824 (1986); see also, <u>Goff v. Dailey</u>, 991 F.2d 1437, 1439 (8th Cir. 1993), cert. denied, 510 U.S. 997 (1993).  Notably, the administration of a prison "requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government" which, even in the context of a constitutional challenge, raises "separation of powers concerns [that] counsel a policy of judicial restraint."  <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987).

In Turner v. Safely, supra, the United States Supreme Court established the following standard of review for prisoners' constitutional claims:

> When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.

Turner v. Safely, supra at 89.

As Turner instructs, the reasonableness of a Regulation is dependent upon the following four factors:

> 1.      Whether a "valid, rational connection" extends between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2.      Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3.      The impact an accommodation of the asserted constitutional right will have on guards and other inmates, and upon the allocation of prison resources generally; and
>
> 4.      The fact that the absence of ready alternatives will evidence the reasonableness of a prison regulation.

Id. at 89-90.

Necessarily, the standard of scrutiny is "relaxed" in order to permit "prison administrators * * * and not the Courts, to make the difficult judgments concerning institutional operations." Id. at 89, quoting Jones v. North Carolina Prisoners' Union, supra at 128; Beard v. Banks, 548 U.S. 521, 528 (2006)[Plurality Opinion]("[C]ourts

owe 'substantial deference to the professional judgment of prison administrators.'"),

quoting <u>Overton v. Bazetta</u>, 539 U.S. 126, 132 (2003).

While, at this stage, we must draw all justifiable inferences in the Plaintiff's favor, "[i]n doing so, however, we must distinguish between evidence of disputed facts and disputed matters of professional judgment." <u>Beard v. Banks</u>, supra at 530. "In respect to the latter, our inferences must accord deference to the views of prison authorities." <u>Id.</u>, citing <u>Overton v. Bazetta</u>, supra. "The burden, moreover, is not on the [Government] to prove the validity of prison regulations but on the prisoner to disprove it." <u>Overton v. Bazetta</u>, supra at 132.

       b.    <u>Legal Analysis</u>. The Plaintiff does not challenge the constitutionality of DOC Directive 301.030 nor, for that matter, the Defendants' "right to enforce reasonable restrictions at the correctional facility known as [MCF-Stillwater]." <u>Plaintiff's Memorandum in Opposition, Docket No. 23</u>, p. 1 of 11. Rather, reading his Complaint indulgently, as we must, see, <u>Williams v. Carter</u>, 10 F.3d 563, 567 (8th Cir. 1993)("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding."), citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Plaintiff alleges that the book he purchased, by virtue of its listing

in a bookseller's catalog in the "Anthropology" section, falls within the anthropologi-

cal and/or educational exception to the ban on sexually explicit materials. According

to the Plaintiff, the Defendants' practice of requiring that a prisoner be enrolled in a

class, in order to obtain materials which fall within an exception to that ban, is

unreasonably restrictive.[4] Accordingly, we proceed to an "as-applied" analysis, under

the <u>Turner</u> factors.[5]  See, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 414 (1989)(adopting

---

[4]The Plaintiff has also alleged that he has become aware that the Defendants have
confiscated the images of deities that were sent to other prisoners.  We recommend the
dismissal of any claim related to the deities, as the Plaintiff has no standing to assert
what he regards as a deprivation of other prisoners' rights.  See, <u>Hodak v. City of St.
Peter</u>, 535 F.3d 899, 906 (8th Cir. 2008); <u>McGowan v. State of Md.</u>, 366 U.S. 420, 429
(1961).

[5]The Defendants have urged that, "when considering whether application of such
a regulation is constitutional, courts consider whether the application was arbitrary or
irrational," and they have provided two unpublished cases, from the Northern District
of California, which appear to have taken that approach.  <u>Defendants' Memorandum
in Support, Docket No. 16</u>, at pp. 11-12 of 22.  We do not find those cases to be
persuasive, however, as our independent research has disclosed that Courts, within our
Circuit, routinely analyze "as-applied" challenges under the <u>Turner</u> factors, in order
to determine the "reasonable relationship" between the particular restriction, and the
asserted constitutional interests.  See, <u>Murphy v. Missouri Dep't of Corrections</u>, 372
F.3d 979, 986 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004)(denying Summary
Judgment because "a material issue of fact remains as to whether MDOC's choice to
censor Issue 36 [of a religious publication called <u>The Way</u>] satisfies the <u>Turner</u>
factors"); <u>Wickner v. Green</u>, 2008 WL 4287580 at *4-7 (D. Minn., June 30, 2008);
<u>Packet v. Clarke</u>, 910 F. Supp. 469, 474-476 (D. Neb. 1996); <u>Nichols v. Nix</u>, 810 F.
Supp. 1448, 1462 (S.D. Iowa, 1993)(acknowledging that the <u>Turner</u> factors will not
(continued...)

the Turner test for challenges to restrictions on First Amendment free speech rights); Murphy v. Missouri Dep't of Corrections, supra at 986 (remanding for a consideration of the "as-applied" challenge under the Turner factors).

The evidence, that the Defendants have submitted in support of their Motion, persuasively demonstrates that restricting a prisoner's access to sexually explicit materials is reasonably related to the legitimate penological interests of safety, of preventing sexual harassment, and of rehabilitating sex offenders. Indeed, the Plaintiff concedes that point. See, Plaintiff's Memorandum in Opposition, Docket No. 23, at p. 4 of 11.[6] Through their uncontroverted Affidavits, the Defendants have

---

[5](...continued)
always equally apply in an "as-applied" challenge, but that the inquiry is one of reasonableness).

[6]As the Plaintiff states the matter:

> The Defendants go to great lengths to rely on the "reasonableness" standard set forth in Turner, Id., to justify their actions and to convince the Court that D.O.C. Policy 301.030 is constitutional. Then to support that claim they go to further lengths to obtain a Sworn Affidavit from Mary McComb, which lays out the extensive research and work that went in to crafting that policy, and to demonstrate how that policy meets their security and other concerns.
>
> Guess what? PLAINTIFF AGREES. Not only does he
> (continued...)

established that the contraband policy, DOC Directive 301.030, has three (3) overarching purposes: 1) prison security, as prisoners value sexually explicit materials, and will assault, and endanger other prisoners, in order to secure those materials; 2) protection of sexual offender rehabilitation, as sexually explicit materials are extremely difficult to control in the interior of a prison, and could unravel any rehabilitation progress to that date; and 3) prevention of a hostile work environment, as sexually explicit materials can be demeaning to prison staff members, and serve as a basis for a prisoner's acting-out in sexually offensive ways. The Plaintiff has offered nothing to contradict, or even to undermine, any of those showings.

The Courts have long recognized that each of those goals is neutral[7] and legitimate. See, <u>Dawson v. Scurr</u>, 986 F.2d 257, 260-61 (8th Cir. 1993), cert. denied sub nom., 510 U.S. 884 (1993)(interference with the rehabilitation of sex offenders); <u>Ramirez v. Pugh</u>, 486 F. Supp.2d 421, 428-30 (M.D. Pa. 2007)(same); <u>Wickner v.</u>

---

[6](...continued)
        agree, he asks the Court to consider Mary McCombs'
        Affidavit as a key peice [sic] of evidence in this litigation.
<u>Plaintiff's Memorandum in Opposition, Docket No. 23</u>, at p. 4 of 11.

[7]A regulation or policy is "neutral" when "prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security," and "further an important or substantial governmental interest unrelated to the suppression of expression." <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 415 (1989).

Green, 2008 WL 4287580 at *5 (D. Minn., June 30, 2008)(harassment, and rehabilitation); Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999), cert. denied, 529 U.S. 1018 (2000)(security, rehabilitation, and sexual harassment of female staff); Packet v. Clarke, 910 F. Supp. 469, 474 (D. Neb. 1996)(prison safety and security). As the Supreme Court explained, in Thornburgh v. Abbott, supra at 412:

> Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly.

Here, the Plaintiff's book was not denied to him because of some moralistic view, on the part of the Defendants, that the book was not worthy of purchase, or had a content that was morally tainted. "The problem is not * * * in the individual reading the materials in most cases; [t]he problem is in the material getting into the prison." Thornburgh v. Abbott, supra at 413.

Of course, prison regulations have to be reasonable in their restrictions, and we are persuaded that the Defendants have demonstrated reasonable, and practicable limits, to the restrictive bounds of the contraband policy. Mary McComb, who was

instrumental in promulgating what became DOC Directive 301.030, has attested, without contravention, as follows:

> The contraband policy does not contain a complete ban on all materials depicting nudity or written descriptions of sexual activity. Publications are banned only if they **feature** nudity or written depictions of sexual activity. Thus, a single nude photo in a publication generally will not lead to a ban on the publication. The policy also includes an exception for medical, educational, or anthropological content in certain circumstances. In addition, "nudity" is defined very narrowly so that only photos showing genitals, the anus or pubic area, or a substantial portion of the female breast are considered to contain nudity. Thus, offenders can have access to photos showing cleavage; photos of buttocks and thongs that do not show the anus; and photos of breasts with bikini tops that are not see-through. All pictorial depictions of sexual activity are banned regardless of whether they are a prevalent part of a publication.

Affidavit of Mary McComb, Docket No. 18, at p. 2-3 of 4 [emphasis in original].

McComb also averred, without contradiction from the Plaintiff, that the "[a]pplication of the policy requires an individualized assessment of each item under review and often requires significant professional judgment by staff." Id. at p. 2. Notably, in Thornburgh v. Abbott, supra at 416, the Court was "comforted by the individualized nature of the determinations required by the regulation," as we are here.

As noted, the ban excludes "medical, educational, or anthropological content in certain circumstances" and, "[a]t [MCF-Stillwater], the exception for medical, educational or anthropological content is interpreted to apply only if the offender is enrolled in educational classes which require such material." "Hillyard Aff.", at p. 3 of 5. Notably, the Plaintiff does not challenge the truth of Hillyard's averments as to the "medical, educational, or anthropological" exceptions, to MCF-Stillwater's ban on sexually explicit materials. For example, the Plaintiff does not show that others, who are similarly situated with the Plaintiff, can possess such materials, without being enrolled in educational classes which require such material.

Nor does the Plaintiff dispute that the book, which he purchased, contains detailed, and graphic, sexual and photographic content. In actuality, since, presumably, the Plaintiff has not seen the contents of the book, he could not know the details of its contents, but we have examined the excerpts, that the Defendants have proffered, and there can be no doubt that the contents are both graphic, and detailed, in their anatomical, physiological, and sexually explicit content. Given the beneficial purposes of DOC Directive 301.030, we can readily understand the Defendants' substantial concern if those materials, which might, under controlled conditions, be otherwise be suitable for medical, educational, and anthropological purposes, were

available, indiscriminately, to the general prison population. Accordingly, as the plurality found, in <u>Beard v. Banks</u>, supra at 530, where the justification for the contraband ban is adequate, "we need go no further."

The Plaintiff, however, suggests that he was duped into believing that the proscriptions of DOC Directive 301.030 would be honored, and he felt that he was justified, by that policy, in ordering the book that has now been confiscated, in order to pursue his educational, and anthropological interests. See, <u>Plaintiff's Memorandum in Opposition, Docket No. 23</u>, at pp. 1-2, and 3-4 of 11. While a novel effort, there plainly was no duping here. When the Plaintiff informed Hillyard of his interest in ordering the book, Hillyard informed him that he would not approve the purchase of the book, owing to its sexually explicit content. See, <u>Hillyard Aff., Exhibit C, Docket No. 19-1</u>, at p. 7 of 34 ("NOT APPROVED"); see also, <u>Hillyard Aff., Docket No. 19</u>, at p. 3 of 5. As he was allowed to do, the Plaintiff appealed that decision, and the final result was that, if he wanted to take the risk, he could order the book, but there was a distinct potentiality that the book would be confiscated pursuant to the ban on contraband. See, <u>Hillyard Aff., Docket No. 19</u>, at p. 3 of 5; <u>Id., Exhibits D and E, Docket No. 19-1</u>, at pp. 8-12. Knowing the risk he confronted, the Plaintiff ordered the book, and plainly accepted that known risk.

While the written policy does not contain all of its detailed applications, the Plaintiff was forewarned, that the "medical, educational, and anthropological exception required enrollment in an educational course." See, <u>Hillyard Aff., Exhibit E, Docket No. 19-1</u>, at p. 12 of 34 ("If you are not currently in an advanced class on Anthropology I would agree that you will have the book reviewed prior to approval."). Given the purposes behind DOC Directive 301.030, we find nothing unreasonable about a requirement that a prisoner be a serious student of anthropology, or medicine, or some other educational pursuit, in order to have access to sexually explicit materials in the confines of a prison. Most any prisoner can claim to be a serious student of the arts, or of the sciences, if the reward is to possess sexually explicit materials that would otherwise be denied to him or her, for the very reasons that prompted the promulgation of the contraband policy in the first instance.

Notably, the Plaintiff does not demonstrate, however slightly, that he is a serious student of anthropology, of medicine, or of some other educational discipline. Rather, he contends that, like Cinderella's step-sisters, if you can conceivably pinch and strain to force an object -- here, a sexually explicit book -- into an exception in which it plainly does not fit -- here, an exclusion for serious educational study -- then all of the penological purposes in keeping sexually explicit materials out of prisons

should be disregarded.  We think not.  If the need to purge the confines of a prison of sexually explicit materials has merit -- and the Courts have universally accepted that it has, see <u>Thornburgh v. Abbott</u>, supra at 413 ("Such regulations [i.e., those restricting the sending of a "publication" to a prisoner] are 'valid if [they are] reasonably related to legitimate penological interests.'"), quoting <u>Turner v. Safley</u>, supra at 89 -- then that meritorious purpose should not be so illusory as to be averted by anyone asserting an interest in some educational pursuit, on an individualized, self-proclaimed basis.  In the context of an educational course, with the supervision of a course instructor, the potentiality that sexually explicit texts would infiltrate throughout the prison will be significantly curtailed.  Accordingly, the Defendants have demonstrated, not only that the contraband policy has a "logical relation" to prison security, but has also shown that relation to be reasonable.  See, <u>Beard v. Banks</u>, supra at 533.[8]

---

[8]The Plaintiff appears to argue that the Defendants should not be allowed to interpret the meaning of the "educational, medical, and anthropological" exception in DOC Directive 301.030, but that argument makes no sense.  The Defendants have interpreted that exception in a way that, we find, advances the security, and related prison administration concerns, that have validated the policy's constitutional application under the circumstances presented here.  While the Plaintiff may not accept that fact, nonetheless, he has failed to present any evidence that the Defendants' concerns are fictitious, or that his possession of the book in question --
(continued...)

Even though the Plaintiff urges that "[t]he Court need not determine if D.O.C. Policy 301.030 meets the 'Turner' standard, because that is not in dispute," we feel obligated to complete the "as-applied" analysis. As to the second Turner factor -- "whether there are alternative means of exercising the right that remain open to prison inmates," Turner v. Safley, supra at 90, the inmates at MCF-Stillwater, inclusive of the Plaintiff, are " permit[ted] a broad range of publications to be sent, received, and read," and therefore, this factor is clearly satisfied." Thornburgh v. Abbott, supra at 418. As the Court explained, in Thornburgh, "the class of publications to be excluded is limited to those found potentially detrimental to order and security," and "the likelihood that such material will circulate within the prison raises the prospect of precisely the kind of 'ripple effect' with which the Court in Turner was concerned." Id. at 418, citing Turner v. Safley, supra at 90.

Nor, as to the third Turner factor, has the Plaintiff "pointed to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological

---

[8](...continued)

indeed, every prisoner's possession of the same book -- raises no legitimate penological concerns, and therefore, the fact that he disagrees with the Defendants carries no weight. See, Beard v. Banks, 548 U.S. 521, 530 (2006)[Plurality Opinion](as to "disputed matters of professional judgment," "our inferences must accord deference to the views of prison authorities."), citing Overton v. Bazzetta, 539 U.S. 126 (2003).

interests," and therefore, we have no basis upon which to conclude that the contraband ban on sexually explicit materials is an "exaggerated response." Id. The concerns that generated the promulgation of DOC Directive 301.030, and that have warranted its application since 2004, are just as valid today, and allowing prisoners to circumvent that policy, so as to infuse sexually explicit materials into the prison's general population, can only cause institutional problems that Directive 301.030 was designed to eliminate.

We are caused some pause, however, by the Defendants' apparent "all or nothing" approach. While our examination has, necessarily, been circumspect, given the limited portions of the book that were presented for our review, it does appear that other portions of the text have content that, intuitively, appear to be facially non-sexual. The book's "Contents" reflect chapters on "The Hair," "The Brow," "The Ears," "The Eyes," "The Nose," and the like. See, Hillyard Aff., Exhibit F, Docket No. 19-1, at p. 15 of 34. We have no reason to believe that those chapters have content that would fuel the security and similar concerns, which Directive 301.030 was designed to effectively dampen. Accordingly, the question arises why the Defendants should not be obligated to expurgate the potentially security-jeopardizing content, while leaving the remaining portions for delivery to the Plaintiff.

Of course, as a threshold consideration, the Plaintiff has not requested the non-offending portions, as the crux of his action is the delivery of the sexually explicit content of the book to his possession. As a result, we are not squarely presented with any request for the return of anything less than the entirety of the book that the Plaintiff purchased. Nonetheless, the final <u>Turner</u> factor considers the impact an accommodation of the asserted constitutional right would have on guards and other inmates. Plainly, if the prison staff members, inclusive of the Defendants, are obligated to read each page of each book purchased by an inmate, so as to assure that all sexually explicit material is redacted, the burdens on the prison staff would be inordinate.

When looking at this precise question in <u>Thornburgh</u>, the Supreme Court concluded that where, as here, "prison officials are able to demonstrate that they have rejected a less restrictive alternative because of reasonably founded fears that it will lead to greater harm, they succeed in demonstrating that the alternative they in fact selected was not an 'exaggerated response' under Turner." <u>Thornburgh v. Abbott</u>, supra at 419; see also, <u>Lindell v. McCaughtry</u>, 115 Fed.Appx. 872, 879 (7th Cir. 2004) ("[W]e are unwilling to say that the DOC should be required to redact publications when the Supreme Court approved the Federal Bureau of Prisons' retention of the 'all

or nothing' rule, which bans the entire publication if anything is found that may threaten security and order."), citing <u>Thornburgh v. Abbott</u>, supra at 418-19.  In any event, the Defendants have retained possession of the Plaintiff's book, and if he should now request the portions that would not specifically be banned by Directive 301.030, then the Defendants can determine the burden of expurgating the offending portions.

In sum, finding, as a matter of law, that DOC Directive 301.030 passes constitutional muster, under the circumstances presented here, we recommend that the Defendants' Motion for Summary Judgment on the Plaintiff's First Amendment claim be granted.

4.    <u>Motion for Summary Judgment:  Fourth Amendment Claim</u>.  The Plaintiff also claims that the Defendants violated his Fourth Amendment rights when they confiscated his book.  In response, the Defendants contend that his claim fails as a matter of law, because the Plaintiff does not have a legitimate expectation of privacy in his cell, and therefore, does not have a legitimate expectation of privacy in the mailroom, so as to prevent the seizure of his property.

Generally, the search of prison cells does not implicate the Fourth Amendment, because prisoners have no reasonable expectation of privacy in their cells.  See,

Williams v. Campbell, 25 Fed.Appx. 477, 479 (8th Cir., December 6, 2001), citing Hudson v. Palmer, 468 U.S. 517, 529-30 (1984); Bausley v. Dugan, 110 Fed.Appx. 736, 736 (8th Cir., October 13, 2004)(same); Foster v. Helling, 210 F.3d 378 at *1 (8th Cir. 2000)(same)[Table Decision].  Similarly, Courts have held that prisoners are not protected from searches of nonlegal, or otherwise privileged mail, when the prisoners were on notice that their mail could and would be inspected, pursuant to prison policies.  See, Ransom v. Greenwood, 288 Fed.Appx. 396, 397 (9th Cir., August 1, 2008)(search and temporary seizure of mail to keep prison free of contraband does not implicate Fourth Amendment); Cooperwood v. McDonald, 2005 WL 1427718 at *4 (W.D. Mich., June 13, 2005)(no Fourth Amendment right to be free of search or seizure of ordinary mail); Stockdale v. Dwyer, 2007 WL 2994316 at *13 (E.D. Mo., October 11, 2007)("When an inmate is made aware that his nonlegal mail may be subjected to official scrutiny pursuant to institutional policies, the inmate's constitutional rights are not violated by the subsequent examination of such mail because he has no reasonable expectation of privacy in it * * * [and] [a]ccordingly, the Court holds plaintiff had no expectation of privacy in either his incoming or outgoing nonlegal mail while incarcerated.").

As a result, the Courts that have addressed the question of a seizure of an inmate's property have analyzed such a deprivation under the Due Process rubric. See, e.g., Rice v. Sobitor, 2004 WL 332867 at *3 (E.D. Pa., January 16, 2004); Jones v. Houston, 2007 WL 3275125 at *5 (D. Neb., November 2, 2007); see also, Hudson v. Palmer, supra at 539, O'Connor, J., concurring (even though the Fourth Amendment does not protect prisoners, "[t]he Due Process and Takings Clauses of the Fifth and Fourteenth Amendments stand directly in opposition to state action intended to deprive people of their legally protected property interests * * *."). In line with that case law, we address the Plaintiff's Fourth Amendment claim, in conjunction with his Due Process claim.

5. Motion for Summary Judgment: Due Process. We find that, as a matter of law, the Plaintiff was afforded appropriate Due Process. In Count III of his Complaint, the Plaintiff alleges that, "after the Defendants imposed a specific Policy upon Plaintiff, which he relie[d] upon to purchase property, the Defendants then confiscated Plaintiff's property in direct conflict of the specific Policy they required Plaintiff to conform to." Complaint, supra at ¶44. In his Response to the Defendants' Motions, the Plaintiff also contends that the confiscation of his book was in violation

of D.O.C. Policy 302.250STW, which prohibits prisoners from possessing only those property items which do not conform to D.O.C. policy. See, Docket No. 23, at p. 7.

"In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court held that 'an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment, if a meaningful postdeprivation remedy for the loss is available.'" Kotowski v. Fabian, 2007 WL 3232515 at *4 (D. Minn., October 31, 2007). "In Procunier, the Supreme Court * * * ruled that a prison's decision to censor a particular mail item 'must be accompanied by minimum procedural safeguards' * * * [and] a prisoner must: be notified of the mail censorship; be given a reasonable opportunity to protest the decision; and be given an opportunity to appeal the decision to a prison official who was not involved in the original censorship decision." Hodgson v. Fabian, 2009 WL 2972862 at *9 (D. Minn., September 10, 2009); see also, Ping v. Raleigh, 205 F.3d 1347, 1347 (8th Cir., January 24, 2000); Cox v. Embly, 784 F.Supp. 685, 689 (E.D. Mo., 1992).

Under the circumstances presented here, we find that the notification and grievance procedures, of which the Plaintiff took full advantage, adequately satisfies the Due Process standards, as set forth in Procunier v. Martinez, 416 U.S. 396, 418

(1974), overruled on other grounds, <u>Thornburgh v. Abbott</u>, supra. See, <u>Bonner v. Outlaw</u>, 552 F.3d 673, 676-77 (8th Cir. 2009)(packages are entitled to the same procedural due process protections as letters, or other mail, including notice of non-delivery). The Plaintiff acknowledges that he received notice that his book had been received, but that he would not be allowed to take possession of it because the book was unauthorized, for nudity, pursuant to DOC Directive 301.030. He also acknowledges that he was able to grieve that denial, both informally and formally, to individuals other than the initial decisionmaker. We find that those procedural protections adequately afforded Due Process to the Plaintiff for the denial of the book he had purchased. As a result, we recommend that the Defendants' Motion for Summary Judgment be granted as to the Plaintiff's Due Process claim, as well as his Fourth Amendment claim.

6. <u>Summary Judgment: Qualified Immunity</u>. The Defendants argue that the Plaintiff's claims against them for damages, in their individual capacities, are barred by the doctrine of qualified immunity. Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See, <u>Wilson v. Layne</u>, 526

U.S. 603, 609 (1999); <u>Young v. Harrison</u>, 284 F.3d 863, 866 (8th Cir. 2002); <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." <u>Wilson v. Layne</u>, supra at 614. The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987). As a consequence, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" <u>Bagby v. Brondhaver</u>, 98 F.3d 1096, 1098 (8th Cir. 1996).

In determining whether a public official has violated a clearly established constitutional right, the reviewing Court has discretion to determine which prong of the two-part test to address first. See, <u>Heartland Academy Community Church v. Waddle</u>, --- F.3d ----, 2010 WL 424441 at *4 (8th Cir., February 8, 2010), citing

Pearson v. Callahan, --- U.S. ---, 129 S.Ct. 808, 818 (2009). With respect to the Plaintiff's Due Process, First Amendment, and Fourth Amendment claims, we have found that he has not demonstrated that the Defendants violated any of those constitutional rights, and therefore, the Defendants are entitled to qualified immunity for those claims. See, Burton v. Richmond, 370 F.3d 723, 729 (8th Cir. 2004), cert. denied, 544 U.S. 905 (2005)(the defendants were entitled to qualified immunity because the plaintiffs failed to show a constitutional violation).

In sum, we recommend that Defendants' Motion to Dismiss be granted as to Defendant Fabian, for lack of personal involvement; that their Motion to Dismiss be granted as to the Plaintiff's claims for damages, against the Defendants in their official capacities, as barred by the Eleventh Amendment; that the Defendants' Motion for Summary Judgment as to the Plaintiff's claims against them in their individual capacities for damages be granted, as they are entitled to qualified immunity; and we recommend that the Defendants' Motion for Summary Judgment as to the Plaintiff's Due Process, Fourth Amendment, and First Amendment claims, be granted as well.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion to Dismiss, or alternatively, for Summary Judgment, be granted, as more fully detailed in the text of this Report and Recommendation.

Dated:  February 23, 2010                    *s/Raymond L. Erickson*
                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 9, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 9, 2010**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.